USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 04/25/2025

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>CLEO AI, INC., a corporation;<br><br>    Defendant. | Case No. 1:25-cv-02594-ALC<br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction, Monetary Judgment, and Other Relief ("Complaint"), for a permanent injunction, monetary relief, and other relief in this matter. The Commission and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendant violated federal statutes.

3. Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4. Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5. Defendant and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Billing Information"** means any data that enables any person to access a consumer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

B. **"Charge,"** **"Charged,"** or **"Charging"** means any attempt to collect money or other consideration from a consumer, including but not limited to causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, utility bill, or other account.

C. **"Clearly and Conspicuously"** means that a required disclosure is easily noticeable (*i.e.*, difficult to miss) and easily understandable by reasonable consumers, including in all of the following ways:

   1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.  A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.  An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for reasonable consumers to easily hear and understand it.

4.  In any communication using an Interactive Electronic Medium, such as the Internet, mobile application, or software, the disclosure must be unavoidable.

5.  The disclosure must use diction and syntax understandable to reasonable consumers and must appear in each language in which the representation that requires the disclosure appears.

6.  The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.  The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.  When the representation or sales practice targets a specific audience, such as children, older adults, or the terminally ill, "reasonable consumers" includes members of that group.

D.  "**Defendant**" means Cleo AI, Inc. and its successors and assigns.

E.  "**Interactive Electronic Medium**" means any electronic means of communicating (except via telephone calls), including Internet, mobile application, text, chat, instant message, email, software, or any online service.

3

  F. **"Material"** means likely to affect a consumer's choice of, or conduct regarding, goods or services.

  G. **"Negative Option Feature"** is a provision of a contract under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the Defendant as acceptance or continuing acceptance of the offer, including, but not limited to: an automatic renewal; a continuity plan; a free-to-pay conversion or fee-to-pay conversion; or a pre-notification negative option plan.

## ORDER

### I. CLAIMS PROHIBITIONS

  IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from misrepresenting, expressly or by implication:

  A. The amount of funds available to a consumer;

  B. When funds will be available to a consumer;

  C. Any fee, including:

    1. whether a consumer is incurring a fee; or

    2. the nature, purpose, amount, or use of a fee;

  D. Any ability to receive cash advances, or any other advertised feature, for free;

  E. Consumers' ability to cancel, or obtain a refund for any Charges;

  F. The existence of a Negative Option Feature;

  G. Any term of the Negative Option Feature, including:

        1.      How and to what consumers are consenting;

        2.      Any deadline to prevent or stop a Charge; or

        3.      The cancellation of the Negative Option Feature; or

    H.    Any other fact Material to consumers concerning any good or service, such as: the total costs; any Material restrictions, limitations, or conditions; or any Material aspect of its performance, efficacy, nature, or central characteristics.

## II. REQUIRED DISCLOSURES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from:

    A.    Failing to Clearly and Conspicuously disclose to a consumer, prior to obtaining the consumer's Billing Information, all Material terms, regardless of whether those terms directly relate to the Negative Option Feature, and including, but not limited to:

        1.      That consumers will be Charged for the good or service, or that those Charges will increase after any applicable trial period ends, and, if applicable, that the Charges will be on a recurring basis, unless the consumer timely takes steps to prevent or stop such Charges;

        2.      Each deadline (by date or frequency) by which the consumer must act to prevent or stop the Charges;

5

        3.     The amount (or range of costs) the consumer will be Charged and, if applicable, the frequency of the Charges a consumer will incur unless the consumer takes timely steps to prevent or stop those Charges;

        4.     The information necessary for the consumer to find the simple cancellation mechanism required pursuant to Section IV below; and

        5.     The total costs; any Material restrictions, limitations, or conditions; or any Material aspect of the good or service.

    B.     Failing to provide:

        1.     The disclosures required by Section II.A.1-4 immediately adjacent to the means of recording the consumer's consent for the Negative Option Feature; and

        2.     The disclosures required by Section II.A, including, but not limited to, the disclosures required by Section II.A.1-5, before obtaining the consent required pursuant to Section III; and

    C.     Including, in all communications required by this Section, regardless of media, any other information that interferes with, detracts from, contradicts, or otherwise undermines the ability of consumers to read, hear, see, or otherwise understand the disclosures required by this Section.

### III. OBTAINING EXPRESS INFORMED CONSENT

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from failing to obtain the consumer's express informed

6

consent before Charging the consumer. In obtaining such express informed consent, Defendant must:

  A. Obtain the consumer's unambiguously affirmative consent to the Negative Option Feature offer separately from any other portion of the transaction, and:

    1. For a written offer (including over the internet, such as through an app), obtain the required consent through a check box, signature, or other substantially similar method, which the consumer must affirmatively select or sign to accept the Negative Option Feature and no other portion of the transaction. The consent request must be presented in a manner and format that is clear, unambiguous, non-deceptive, and free of any information not directly related to the consumer's acceptance of the Negative Option Feature; and

    2. For an oral offer, obtain unambiguous express oral confirmation that the consumer: (a) consents to being Charged for any product or service, including providing, at a minimum, the last four digits of the consumer's account number to be Charged, (b) understands that the transaction includes a Negative Option Feature, and (c) understands the specific steps that the consumer must take to prevent or stop further Charges;

  B. Not include any information that interferes with, detracts from, contradicts, or otherwise undermines the ability of consumers to provide their express informed consent to the Negative Option Feature; and

  C. Keep or maintain verification of the consumer's consent for at least three years, including, for oral offers, an unedited voice recording of the entire transaction, and:

   1. Maintain each record of verification such that it can be retrieved by date and by the consumer's name, telephone number, or Billing Information; and

   2. Provide the record of verification upon request to the consumer, the consumer's bank, or any law enforcement entity.

## IV. SIMPLE CANCELLATION MECHANISMS FOR NEGATIVE OPTION FEATURES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from failing to provide a simple mechanism for a consumer to: cancel the Negative Option Feature; avoid being Charged, or Charged an increased amount, for the good or service; and immediately stop any recurring Charges.  The simple mechanism required by this Section must be at least as easy to use as the mechanism the consumer used to consent to the Negative Option Feature, and:

  A. At a minimum, Defendant must provide such simple mechanism through the same medium the consumer used to consent to the Negative Option Feature, and:

   1. For cancellation by Interactive Electronic Medium, the simple cancellation mechanism must be easy to find when the consumer seeks to cancel.  Compliance with Section II.A.4 does not satisfy this obligation.  In no event shall a consumer be required to interact with a live or virtual representative (such as chatbot) to cancel if the consumer did not do so to consent to the Negative Option Feature;

   2. For cancellation by telephone call, Defendant must promptly effectuate cancellations requested by the consumer via a telephone number that is (a)

answered by Defendant or records message, (b) available during normal business hours, (c) not more costly to use than the telephone call the consumer used to consent to the Negative Option Feature, and (d) easy to find and clearly displayed on the Defendant's websites; and

3. For cancellation of consent obtained in person, Defendant must offer the simple mechanism (a) via an in-person method similar to that the consumer used to consent to the Negative Option Feature, and (b) through an Interactive Medium and by providing a telephone number that complies with Section IV.A.2.

## V. MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A. Judgment in the amount of Seventeen Million Dollars ($17,000,000) is entered in favor of the Commission against Defendant as monetary relief.

B. Defendant is ordered to pay to the Commission, Seventeen Million Dollars ($17,000,000), which, as Defendant stipulates, it holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## VI. ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A. Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to

9

enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Defendant acknowledges that Defendant's Employer Identification Number, Social Security Number, or other Taxpayer Identification Number ("TIN"), including all TINs that Defendant previously provided, may be used by the Commission for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in accordance with 31 U.S.C. §7701.

E. All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for relief is to be deposited to the U.S. Treasury. Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VII. CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## VIII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A.   Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.   For 7 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.   No later than 180 days after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.   Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of

11

the Commission may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.     For 10 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.     Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:         " and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580. The subject line must begin: FTC v. Cleo AI, Inc., FTC Matter No. 2423004.

## X. RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant must create and retain the following records:

A.  Accounting records showing the revenues from all goods or services sold;

B.  Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.  Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.  All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.  A copy of each unique advertisement or other marketing material.

## XI. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.  Within 14 days of receipt of a written request from a representative of the Commission, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.  For matters concerning this Order, the Commission is authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.  The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any

13

individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XII. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED** this 25th day of April, 2025.

*[signature]*

UNITED STATES DISTRICT JUDGE
HON. ANDREW L. CARTER, JR.

**SO STIPULATED AND AGREED:**

**FEDERAL TRADE COMMISSION**

/s/ James Doty                                              Date: 03/19/2025

ADAM SALTZMAN
MAYA SEQUEIRA
SALLY TIEU
JAMES DOTY
JAMIE D. BROOKS

Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mailstop CC-10232
Washington, D.C. 20850
Tel: (202) 538-1038 (Saltzman)
(202) 717-0369 (Sequeira)
(202) 326-2088 (Tieu)
(202) 326-2628 (Doty)
(202) 621-3913 (Brooks)

E-mail: asaltzman1@ftc.gov
msequeira@ftc.gov
stieu@ftc.gov
jdoty@ftc.gov
jbrooks4@ftc.gov

**FOR DEFENDANT:**

*Signed by:*
*Allyson Baker*
— D0DAFA51251C4CE...

ALLYSON B. BAKER
MEREDITH BOYLAN
SAMEER SHEIKH
MICHAEL MARUSAK
PAIGE RINDERER
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1830
allysonbaker@paulhastings.com
meredithboylan@paulhastings.com
sameersheikh@paulhastings.com
michaelmarusak@paulhastings.com
paigerinderer@paulhastings.com

Date: 3/11/2025

DEFENDANT CLEO AI, INC.

*DocuSigned by:*
*Barney Hussey-Yeo*

Name: Barney Hussey-Yeo
As an officer of Cleo AI, Inc.

Date: 3/11/2025

16